**FISHERBROYLES, LLP**
Jill A. Guldin, Esq. (No. 93657)
One Liberty Place
1650 Market Street, 36th Floor
Philadelphia, Pennsylvania 19103
Telephone: (856) 494-0869
Facsimile: (856) 494-1566
Email:  jill.guldin@fisherbroyles.com

*Attorneys for Plaintiff Plasma Futures, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Plasma Futures, LLC, | Case No. 2:21-cv-02528 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CET Solutions, Ltd., | |
| Defendant. | |

Plaintiff, Plasma Futures, LLC ("Plaintiff" or "Plasma Futures"), by its undersigned attorneys, for its complaint against CET Solutions, Ltd. ("Defendant" or "CET"), hereby states and alleges as follows:

## PARTIES

1.     Plasma Futures is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania and has an office at 1000 Northbrook Drive, Feasterville-Trevose, Pennsylvania 19053.  Plasma Futures is managed by its sole member, a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, which, in turn, is owned by a trust organized and existing under the laws of the Commonwealth of Pennsylvania.

2.      CET is a limited liability company organized and existing under the laws of the State of Ohio.  Upon information and belief, at all times relevant to this complaint, CET is a manager-managed limited liability company. Upon further information and belief, at all times relevant to this complaint, none of the members of CET is a resident of the Commonwealth of Pennsylvania.  CET's founder, majority owner and sole manager, Thomas J. Sheperak ("Mr. Sheparak"), is an individual who resides in the State of Ohio.

3.      This action concerns a certain Patent License Agreement entered into as of January 22, 2021, by and between Plasma Futures and CET.  A true and correct copy of the Patent License Agreement is attached hereto as **Exhibit A**.

4.      The technology covered by the Patent License Agreement holds significant potential for a number of groundbreaking uses in medicine, dentistry, industry and other fields. The technology provides a unique, effective, inexpensive and safe platform using an electron beam to produce nitric oxide, used to sterilize wounds, hands or even gums. Among other things, the technology platform is portable and energy efficient and has the potential for revolutionary advances in the production of nitric oxide, which could enable hospitals and other users of nitric oxide to by-pass the current expensive physical delivery logistics network used to ship nitric oxide in heavy, cumbersome and expensive tanks.

5.      Mr. Sheperak is the inventor of the patented technology. Mr. Sheperak has assigned ownership of the patented technology to CET, which in turn licenses the technology to Plasma Futures.

6.      After detailed negotiations, capital investment by Plasma Futures, payments of royalties to CET, and reasonable reliance, all in furtherance of the Patent License Agreement, CET (through its passive minority members claiming to act under color of authority) has threatened to

sue Plasma Futures, claiming that the Patent License Agreement is invalid or unenforceable, and alleging that Plasma Futures' actions in furtherance of the Patent License Agreement are an infringement of CET's intellectual property rights.

7.      Upon information and belief, the minority members who object to the Patent License Agreement are engaged in an on-going and unlawful attempted takeover of CET and its technology. Among other things, within days of CET's execution of the Patent License Agreement, the minority members unilaterally called a meeting of the company's members and then unilaterally purported to dismiss Mr. Sheperak as the company's lawfully appointed manager, and then prohibited Mr. Sheperak from voting his 82% interest on the appointment of replacement managers. Immediately thereafter, the alleged replacement "managers" retained legal counsel, purportedly on CET's behalf, and now seek to declare the Patent License Agreement invalid and unenforceable.

8.      Thus, the minority members are attempting to obtain control of the intellectual property that Mr. Sheperak developed and contributed to CET by, *inter alia*, attempting to wrest control over CET's daily operations and appropriating more than half of Mr. Sheperak's membership interest in CET, for the ultimate benefit of, and re-distribution to, one or more of the minority members. Moreover, these minority members are attempting to deprive Plasma Futures of its investment and license rights in the licensed technology.

9.      In light of the foregoing, Plasma Futures seeks a declaration that the Patent License Agreement is valid and enforceable, and remains in effect between the parties.  Additionally, Plasma Futures seeks affirmative relief to redress CET's breach of the Patent Licensing Agreement.

## JURISDICTION

10.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.  This is also an action for breach of contract pursuant to the laws of the Commonwealth of Pennsylvania.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiffs' claim occurred in, or were directed to parties within, this District.

13.     Additionally, venue is proper in this District pursuant to the specific terms of the Patent Licensing Agreement.  Specifically, Section 15.13(b) of the Patent License Agreement states, in pertinent part: "Any legal suit, action, or proceeding arising out of or related to this Agreement or the licenses granted hereunder . . . must be instituted in the federal courts of the United States or the courts of the Commonwealth of Pennsylvania, in each case located in Bucks County, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding." Bucks County is within this District.

14.     This Court has personal jurisdiction over CET by virtue of the Patent License Agreement, wherein CET agreed to submit to the jurisdiction of this Court, as set forth above. Additionally, this Court has personal jurisdiction over CET pursuant to Pennsylvania's long-arm statute, 42 Pa. Consol. Stat. Ann. § 5322, because CET, *inter alia*, transacted business in the Commonwealth of Pennsylvania and caused harm in the Commonwealth of Pennsylvania from outside the Commonwealth.

## FACTUAL BACKGROUND

15.     Plasma Futures is a company that believes in the value and prospects of the technology invented by Mr. Sheperak. Backed by a successful entrepreneur and angel investor with a keen appreciation of the technology, Plasma Futures decided to invest in the technology by way of the Patent License Agreement, to do what CET had not yet been able to do after nearly 10 years of effort by Mr. Sheperak and numerous others – commercialize Mr. Sheperak's technology.

16.     Upon information and belief, nearly a decade ago, Mr. Sheperak filed his first provisional patent application directed to the technology he invented, which is known as the "Plasma Directed Electron Beam," and comprises a device that utilizes a cold plasma to contain and direct a stream of electrons with a hand held nozzle to enhance healing of wounds and skin surface abnormalities, and to kill pathogens on skin surfaces.  Mr. Sheperak proceeded to pursue patent protection in the United States and internationally.

17.     Mr. Sheperak's patent portfolio includes at least the patents and applications set forth in Schedule "1" to the Patent License Agreement (collectively, the "Licensed Patents").

18.     Upon information and belief, CET was formed on or about September 29, 2017.

19.     Mr. Sheperak is the founder and majority owner of CET, owning approximately 82% of the shares in CET.

20.     Upon information and belief, there are approximately 9 minority members of CET, who collectively own approximately 18% of the shares in CET.

21.     Upon information and belief, the intended purpose of CET was to promote and commercialize the Plasma Directed Electron Beam ("PDEB") technology.

22.     Upon information and belief, however, since its formation and prior to the Patent License Agreement, CET never generated a single dollar of revenue related to the technology.

23.     Upon information and belief, prior to the Patent License Agreement, CET entered into only one other license agreement related to the PDEB technology. That agreement is with NBS Tek, LLC, an Ohio entity formed and controlled by Carl Blazik and Jeff Szoda – CET's two "replacement" managers purportedly appointed by the minority members – along with Szozda's father, Tom Szozda, and former CET co-manager, Bill Niedzwiecki.

24.     Upon information and belief, the NBS Tek license, generally referred to as the "Bed Bug License," is limited to the narrow field of the eradication of bedbugs and was granted to NBS Tek on extraordinarily generous economic terms, including CET's waiver and forgiveness of upfront licensing fees and related consulting fees. Moreover, the Bed Bug License has yet to generate a single penny of revenue for CET. Indeed, the practical application of the technology is still in the development stage and no royalties are even expected until 2023.

25.     Given this extraordinarily limited success in commercializing the technology, CET was motivated to find new business partners to support the broad commercialization of the PDEB technology, especially for medical and public health applications, and Plasma Futures was a desirable partner.  CET and Plasma Futures thus entered into the Patent License Agreement for their mutual benefit.

26.     The Patent License Agreement was made effective as of January 22, 2021.

27.     Mr. Sheperak signed the Patent License Agreement as Manager of CET on or about January 22, 2021.

28.     Gary Baron signed the Patent License Agreement as President of Plasma Futures, LLC on or about January 22, 2021.

29.     The Patent License Agreement provides Plasma Futures and its affiliates with a limited exclusive and sublicensable license to the Licensed Patents throughout the world, for all

fields of use except the eradication of bed bugs. This license grant is set forth in Section 2.1, which is reproduced below:

> 2.1    Scope of Grant. Subject to the terms and conditions of this Agreement, Licensor, on behalf of itself and its Affiliates/Subsidiaries, hereby grants to Licensee and its Affiliates during the Term an exclusive sublicensable right and license under the Licensed Patents to make (or have made), use, offer to sell, sell, and import Licensed Products in the Field of Use in the Territory. For the avoidance of doubt, the grant includes substantially all rights in the Licensed Patents.

30.    The license remains in effect for the lives of the Licensed Patents. Specifically, Section 13.1 of the Patent License Agreement states:

> 13.1    Term. This Agreement is effective as of the Effective Date and, unless terminated earlier in accordance with Section 13.2, will continue in full force and effect on a Licensed Product-by-Licensed Product until the expiration of the last to expire Valid Claim of a Licensed Patent (the "**Term**").

31.    Pursuant to Section 13.2 of the Patent License Agreement, CET as Licensor may terminate the Patent License Agreement only if: (i) Plasma Futures undergoes a liquidation event as set forth in Section 13.2(c); or (ii) if Plasma Futures materially breaches and does not cure the breach within sixty days of written notice thereof, as set forth in Section 13.2(b), which states as follows:

> (b)    Either Party may terminate this Agreement on written notice to the other Party if the other Party materially breaches this Agreement and fails to cure such breach within sixty (60) days after receiving written notice thereof or, if the breach cannot be reasonably cured within such period, fails to promptly commence to cure and diligently proceed until cured. If the breaching Party cures any such breach, this Agreement shall continue unabated and neither Party shall be liable for any loss, damage or expense arising out of or from or as a consequence of any such breach.

32.    None of the liquidation events of Section 13.2(c) has occurred, so that section has not become operable to terminate the Patent License Agreement.

33.    Plasma Futures has not materially breached the Patent License Agreement.

34.     Neither CET nor anyone acting on its behalf has provided any written notice to Plasma Futures alleging that Plasma Futures has materially breached the Patent License Agreement.

35.     To the contrary, Plasma Futures has fulfilled all of its obligations under the Patent License Agreement, including paying royalties thereunder.

36.     Additionally, the Patent License Agreement has not expired pursuant to Section 13.1, because not all Valid Claims (as defined in the Patent License Agreement) of the Licensed Patents have expired.

37.     Subsequent to execution of the Patent License Agreement, the minority members of CET have alleged that the Patent License Agreement is invalid and unenforceable.  In particular, the minority members have alleged that Mr. Sheperak did not have authority to enter into the Patent License Agreement.  To the contrary, at the time the parties entered into the Patent License Agreement, Mr. Sheperak was the manager and majority owner of CET and, as manager, had authority to enter into the Patent License Agreement.

38.     Moreover, upon information and belief, Mr. Sheperak provided advance notice to all minority members of his intent to enter into the Patent License Agreement on behalf of CET, and none of the minority members timely objected.  Accordingly, Mr. Sheperak's execution of the Patent License Agreement was valid and binding upon CET.

39.     Additionally, upon information and belief, the minority members have sought to remove Mr. Sheperak as manager of CET and are seeking to reduce his ownership interest to a minority share in order to gain control of CET and the technology Mr. Sheperak invented.

40.     By letter dated February 15, 2021, Plasma Futures' counsel received a letter from attorney Norman A. Abood, claiming to represent CET as well as its minority members.  A true and correct copy of the February 15, 2021 letter is attached hereto as **Exhibit B** (hereinafter, the "February 15 Letter").

41.     The February 15 Letter asserts: "Please be aware that because of Mr. Sheperak's conduct, he is no longer the CET manager.  The new co-managers are Mr. Jeff Szozda and Mr. Carl Blazic; CET has, by resolution, engaged me [Norman A. Abood] as its attorney."

42.     The February 15 Letter also asserts that Plasma Futures has interfered with CET's rights and alleges damages in connection therewith.

43.     The February 15 Letter also asserts that the Patent License Agreement is a "nullity" and is "illusory."

44.     The February 15 Letter threatens that CET will sue Plasma Futures if it does not cease and desist from all activities related to the Licensed Patents and subject technology:

> For purposes of the record, if nothing else, be advised that this correspondence is formal notification that the purported January 22, 2021 License Agreement is a nullity. It is fraught with representations which both Mr. Sheperak and your clients know to be false. Please advise your clients of CET's demand that your clients immediately cease-and-desist from undertaking any activities whatsoever relative to CET's technology without CET's express written consent, which must be obtained after the date hereof. Any further activity without such express written agreement will be viewed as actionable.

45.     Upon information and belief, Mr. Sheperak has not lawfully been removed as a manager of CET, and the minority members and Mr. Abood are acting without authority on behalf of CET.  Nevertheless, the threats that the Patent License Agreement is a "nullity" and not in effect, and that CET will sue Plasma Futures for infringement and damages, have created an actual case or controversy between the parties that Plasma Futures requests this Court adjudicate.

46.     Plasma Futures has invested significant time, resources, and capital in furtherance of the Patent License Agreement and the Plasma Directed Electron Beam technology.

47.     Plasma Futures is entitled to the benefit of its Patent License Agreement with CET.

48.     If the Patent License Agreement is not honored, Plasma Futures will suffer actual damages in excess of $75,000.

49.     Additionally, Plasma Futures will suffer irreparable harm from its past and ongoing actions in furtherance of the Patent License Agreement, and its business interests are jeopardy as a result of the minority members' threats to unilaterally rescind the Patent License Agreement.

## COUNT I
### Declaratory Judgment

50.     Plasma Futures incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

51.     There is an actual and justiciable controversy between Plasma Futures and CET.

52.     The Patent License Agreement is valid and enforceable and effective as of January 22, 2021, until it terminates in accordance with its express terms.

53.     By virtue of the Patent License Agreement, Plasma Futures has the right to pursue commercialization of the technology embodied in the Licensed Patents and to take all lawful actions pursuant to the license grant.

54.     Plasma Futures is entitled to, and hereby respectfully seeks, declaratory judgment that the Patent License Agreement is valid and enforceable.

55.     Plasma Futures is entitled to, and hereby respectfully seeks, declaratory judgment that CET has no present right to terminate the Patent License Agreement.

## COUNT II
### Breach of Contract

56.     Plasma Futures incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

57.     Section 13 of the Patent License Agreement permits CET to terminate the license to Plasma Futures only upon a liquidation event set forth in Section 13.2(c) or upon 60 days' written notice to Plasma Futures in the event of an uncured material breach.  Neither of these conditions precedent has been met.

58.     CET—through counsel acting under alleged apparent authority of CET's minority members—has unilaterally declared the Patent License Agreement terminated.

59.     CET has never provided Plasma Futures with written notice of any alleged breach nor opportunity to cure any alleged breach, as required by Section 13.2(b) of the Patent License Agreement.

60.     Indeed, Plasma Futures has not breached, but rather has fulfilled its obligations under, the Patent License Agreement.

61.     No liquidation events have occurred which would permit CET to terminate the contract pursuant to Section 13.2(c) of the Patent License Agreement.

62.     Accordingly, CET has no present right to terminate the Patent License Agreement, and its attempts to do so are a breach thereof.

63.      The Patent License Agreement provides Plasma Futures with a right to equitable relief to prevent CET's breach, including injunctive relief and specific performance, as set forth in Section 15.15 of the Patent License Agreement, which states as follows:

> 15.15   Equitable Relief. Each Party acknowledges that a breach by the other Party of this Agreement may cause the non-breaching Party irreparable harm, for which an award of damages would not be adequate compensation, and agrees that, in the event of such a breach or threatened breach, the non-breaching Party will be entitled to equitable relief, including in the form of a restraining order, orders for preliminary or permanent injunction, specific performance, and any other relief that may be available from any court, and the Parties hereby waive any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such relief. These remedies are not exclusive but are in addition to all other remedies available under this Agreement at law or in equity, subject to any express exclusions or limitations in this Agreement to the contrary.

64.     CET has expressly acknowledged that its breach may cause Plasma Futures irreparable harm, and that Plasma Futures is entitled to injunctive relief, specific performance, or other appropriate equitable remedies.

65.     Plasma Futures is entitled to, and hereby respectfully seeks, preliminary and permanent injunctive relief enjoining CET from taking any actions to deprive Plasma Futures of the benefit of its bargain under the Patent License Agreement.

66.     Plasma Futures is entitled to, and hereby respectfully seeks, an order for specific performance requiring CET to fulfill its obligations under the Patent License Agreement, including honoring the license grant therein.

67.     Plasma Futures is also entitled to, and hereby respectfully seeks, recovery of damages resulting from CET's breach.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Plasma Futures, LLC prays that this Court enter judgment against Defendant CET Solutions, Ltd. as follows:

A.     A declaration that the Patent License Agreement between Plasma Futures and CET is valid and enforceable.

B.     A declaration that CET has no present right to terminate the Patent License Agreement.

C.     Preliminary and permanent injunctive relief enjoining CET from undertaking any actions contrary to the spirit and scope of the Patent License Agreement or from otherwise depriving Plasma Futures of its rights under the Patent License Agreement.

D.     An order for specific performance requiring CET to fulfill its obligations under the Patent License Agreement, specifically including honoring the license grant therein.

E.     An award of damages in an amount to be determined at trial.

F.      An award of Plasma Future's costs in prosecuting this action.

G.      Such other and further relief as this Court may deem just and equitable.

                                        Respectfully submitted,

Dated: June 3, 2021                     FISHER BROYLES, LLP

                                        By:  _____/s/ *Jill A. Guldin*_____
                                        Jill A. Guldin, Esquire
                                        1650 Market Street, 36th Floor
                                        Philadelphia, Pennsylvania 19103
                                        Telephone: (856) 494-0869
                                        Facsimile: (856) 494-1566
                                        Email:  jill.guldin@fisherbroyles.com

                                        *Attorneys for Plaintiff Plasma Futures, LLC*

Of Counsel:
Christopher R. Kinkade
FISHERBROYLES, LLP
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
Tel: 609-415-0101
Email: christopher.kinkade@fisherbroyles.com